. **RUUD MFG. CO. v. FOWLER et al.**

(District Court, S. D. New York. July 12, 1924.)

Patents ⬤═328—Reissue No. 15,136, for valve-closing device on automatic water heater, held valid and infringed.

    Ruud reissue patent, No. 15,136, for valve-closing device for control of fuel supply on automatic water heater, *held* valid and infringed.

In Equity. Suit by the Ruud Manufacturing Company against Margaret J. Fowler and others. Decree for complainant.

Ralph Lane Scott, of New York City (S. T. Cameron, of Washington, D. C., of counsel), for complainant.

John E. Hubbell, of New York City (Francis T. Chambers and William Steell Jackson, both of Philadelphia, Pa., of counsel), for defendants.

AUGUSTUS N. HAND, District Judge. This is a suit for infringement of claim 1 of letters patent to Edwin Ruud, reissue No. 15,136. The claim reads as follows:

"1. In a storage water heater system, the combination of a water heater, a reservoir, connections between the same, a valve to control the supply of fuel to said heater, a thermostat in said reservoir, a lost-motion connection between said thermostat and valve, and means to cause said valve to remain either entirely closed or completely open."

The specification describes the invention thus:

"The object of my invention is to provide means whereby the loss of heat, due to the draft of the chimney when the heater is not required to be in operation, shall be effectively eliminated. In all automatic storage water heaters known in the art prior to my invention, so far as my knowledge and information extend, a predetermined temperature has been maintained in the heating coil or boiler, independent of that of the volume of water which may be contained in the reservoir with which the heating appliance proper is connected. The air drawn through the casing of the heater, which passes up the chimney, absorbs a certain amount of heat, and this heat loss is, under my invention, minimized.

"My invention, generally stated, consists in the combination, with a heating appliance and a hot water storage reservoir, of a thermostatic regulator connected with the storage reservoir, and a valve operated thereby and adapted to instantly fully open, or completely close, as the case may be, the supply of gas to the heater, the operation of said regulator and valve being such as to provide a full flow of gas which works the heater at its maximum capacity in heating water, until the storage reservoir is filled with hot water, whereupon the supply of gas to the heating surfaces is automatically and entirely cut off, except as to a small pilot light, which does not exert any substantial heating action. The heating appliance being located at a lower level than the storage reservoir, the circulation of water promptly ceases, by reason of the fact that the coldest water is the heaviest and remains quiescent in the heating appliance, so that the air which passes up the chimney comes in contact merely with cold surfaces in the heating appliance. * * * It will thus be seen that, by the application of my invention, the heat losses inherent in the ordinary storage water systems are completely eliminated, and the economy thus effected renders practicable the utilization of illuminating

gas as a heating medium. This, prior to my invention, has been found too expensive by reason of the former waste of gas when constant combustion at the main burners is maintained. A further advantage is attained in the prevention of flashing, by reason of the gas being immediately fully turned on to the burners whenever the heating appliance is required to operate."

So far as the defense of anticipation goes, the prior use is the only thing which differentiates this record from that in the suit brought by this complainant against Long-Landreth-Schneider Co., where the claim now under consideration was held valid by Judge Learned Hand, who was sustained by the Circuit Court of Appeals. 25 Fed. 860, 163 C. C. A. 174. That use depends on the recollection of witnesses of occurrences 20 years ago. The witness Barrett is a man of no technical training, and his testimony shows that the valve he produced was not the original valve upon which the use prior to 1908 is based. The recollection of such a man, or of other witnesses, as to the workings of a valve, where precision is vital, is proof of a prior use quite inadequate to defect a patent. It is somewhat significant that the Potters, who had the heater, gave up gas and changed their heating to coal. This somewhat tends to indicate that the valve-closing device which they used was inadequate to open fully the valve and thus to save fuel, as taught by the Ruud patent.

Fred W. Powers, the secretary and treasurer of the Powers Duplex Regulator Company, also gave this important testimony in his deposition:

"Q. 27. What was the intent, in these domestic hot water heaters, with regard to supplying the burners at the first jump with all the gas that they would take? A. Well, there was no particular intent on our part. It just happened that way, that the valves when so used did it; not all they would take, perhaps, in every case, but all that they required to do the necessary heating."

The witness Charles Lindner, who did not claim to have seen the Powers valve for 24 years, said:

"Q. 28. How much gas did it give on the first movement? A. Why, enough to ignite all the burners."

John Peterson, an employee of the Powers Company, also said about a valve installed in 1901:

"Q. 30. How did the gas valve about which you have testified operate? • • •

A. The valve operated with a positive action; that is, opening it up, allowing sufficient gas to enter to keep it from going into the mixer. This was positive action, and later on, if any additional operating was required, it became a gradual action valve."

On page 19, Exhibit 18, which is a circular describing the Powers regulator under date of 1899-1900, the instructions say:

"The valve is shown in position at the lower end of the chain in the large cut; also pipe to the pilot light. The valve is shown in detail in the cut at the right. It is absolutely frictionless, affords a graduated control, and yet shuts entirely off before supply of gas is reduced so low as to flash back and light in the mixer."

This, as well as the extracts I have quoted from the testimony, seems to show that the Powers valve only opened fully enough to prevent back-flashing and to secure a proper flame, and did not by the "jump" at once give the maximum amount of gas, as called for by the Ruud patent. If this be not entirely demonstrable, the proof is at any rate too uncertain to establish a prior use.

Furthermore, the Powers valve was in the pipe between the burner and the reservoir, and not in the reservoir. This made it under the control of the temperature in the pipe, rather than in the reservoir, and does not come within the element of the Ruud claim. Complainant's expert Wadsworth testified that the temperature of this pipe would usually be much higher than that of the reservoir, and consequently the Powers valve would cut off the gas from the burner before the water in the reservoir was sufficiently heated. Defendants' expert Livermore showed no more than that it would not cut off the gas before the water in the bottom of the reservoir reached a temperature, though not very high, reasonably warm.

Irrespective of Wadsworth's contention that the magnet said to operate the Powers valve had no efficacy, I think his opinion that that valve acted substantially as a straight thermostatic valve, and with only sufficient jump to prevent the gas from back-flashing is fairly borne out by the testimony. At any rate the Ruud snap action intended to give instantly a full flow of gas has not been proved.

In respect to infringement, little need be said. A distinction which defendants seek to draw is that its device contains a flue and involves an air draft which complainant says its invention avoids. I think Mr. Wadsworth showed that the effect of the draft in defendants' device is rendered un-

important by the nonconductivity of the annular body of water in the heater. The flue in defendants' heater is so placed next this annular body of nonconductive water that there can be little waste of heat by the draft of the flue. In any event the defendants' heater has all the elements of the patent, and secures the advantages of an opening and closing thermostatic device which at once burns gas as short a time as possible, and always when operating gives the maximum amount of flame, so as to heat the water most rapidly, and to prevent the burner from back-flashing. To call for a location of the reservoir extraneous to the heater is not required by the ,words of the claim, and narrows complainant's invention so that the defendants could use all Ruud's ideas without infringement.

The invention is a narrow one, but the claim should be given scope enough to protect what has been shown to be a successful commercial device. I think the defendants' heater comes within the former decision, and the situation is nowise altered by the Powers use. See Ruud Mfg. Co. v. Long-Landreth-Schneider Co., 250 Fed. 860, 163 C. C. A. 174.

An interlocutory decree is granted for the complainant. Settle decree on notice.