## Case No. 7,886.

### KNIGHT v. PARSONS.

[1 Spr. 279;[1] 18 Law Rep. 96.]

District Court, D. Massachusetts. Jan., 1855.

SEAMEN—RIGHT TO BE CURED AT SHIP'S EXPENSE —MACKEREL FISHERMEN—JOINT ADVENTURERS—CONTRARY USAGE.

1. Fishermen on mackerel voyages, in licensed and enrolled vessels, come so far within the general rule relating to hired seamen, as to be entitled to be cured at the ship's expense.
[Cited in Crowell v. Knight, Case No. 3.445; The Cornelia M. Kingsland, 25 Fed. 858; Telles v. Lynde, 47 Fed. 916.]

2. It makes no difference, as to the application of this rule, that an account was kept of the catchings of each man, who was to be paid ac-

cordingly. The crew are still to be considered as hired: and are not mere joint adventurers.
[Cited in Somerville v. The Francisco, Case No. 13,171.]
[Quoted in Lewis v. Chadbourne, 54 Me. 486.]

3. In this case, evidence of a usage that the crews of mackerelmen have not been treated for sickness at the ship's expense, and have not desired to be so, was not allowed to countervail this rule.

This was a suit in personam, in admiralty. The libellant was a fisherman on board the schooner Avon, of Gloucester, of which the respondent was skipper and part owner. The Avon was enrolled and licensed for the mackerel fishery, and was engaged in mackerel fishing in the Gulf of St. Lawrence. The shipping contract was to the effect that the owners would furnish the provisions, stores, salt, and other outfits, and that the cash proceeds of the catchings should be equally divided,— one half to the owners, and one half to the skipper and men. The contract did not state how the crew should divide among themselves. It appeared that, by agreement between the skipper and the rest of the crew, an account was kept of what each man caught, and they divided according to their actual catchings. The ~~llant was taken ill on the voyage, went ~ ~~re and consulted a physician, and bought medicine. Afterwards, being more ill, he desired to leave the vessel entirely, and he was set ashore at a port on Prince Edward's Island. When leaving the vessel, he obtained ten dollars of the skipper, for his expenses on shore, telling the skipper that his fish would be sufficient security. He remained awhile ill, on the island, and then returned to Gloucester. When the vessel arrived, he settled his voyage with the owners, taking pay for half the fish he had caught at the time of his leaving the vessel, and allowing a deduction of the ten dollars borrowed, and of the amount paid for medical advice and medicines. He made no objection to the settlement, and gave no notice of any claim for compensation for his expenses after he left the vessel. About three months after the settlement, notice of the claim was given by his proctor, and this suit was commenced. The claim was for medicines, board, and medical advice, while at Prince Edward's Island, and for the expenses of his return to Gloucester. A large number of witnesses were examined, all of whom testified that, by a long established usage in Gloucester, mackerel vessels do not carry medicines, on the ship's account, but each man furnishes his own, and the uniform rule of settlement, to which no exception had ever been known to exist, was, that each man should bear the expenses of medicines and medical advice, and if a man left the vessel from sickness, he lost the rest of his voyage, and received no compensation for his expenses after leaving the vessel.

C. G. Thomas, for libellant.
R. H. Dana, Jr., for respondents

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

SPRAGUE, District Judge. This case, as presented, raises three questions: 1st. Do fishermen on mackerel voyages, in licensed and enrolled vessels, so far come within the general rule of law relating to hired seamen, as to be entitled to be cured at the ship's expense? 2d. If so, does the usage of Gloucester take this case out of the operation of the general rule? 3d. Do the acts of the libellant, at the time of leaving the vessel, or at the time of the settlement, amount to a remission of his general right?

It is conceded that hired seamen are, as a general rule, entitled to be treated for sickness, at the ship's expense, and, if they leave the vessel from necessity, or for the common benefit, they are entitled to the reasonable expenses of their cure and return. It is conceded that this rule is extended to whalemen, who receive a lay, or share of the oil taken; but it is contended that this lay is only a mode of fixing compensation, they being in fact but hired seamen, their pay being graduated by the success of the voyage. But I can see no difference, in principle, between the whalemen and the mackerelmen. As whales must be taken by united efforts, separate accounts cannot be kept, as was done here, and as is usually done in mackerel vessels; but each man is paid according to his supposed capacity as a whaleman, the rates of lays being graduated accordingly. In this voyage, the contract with the owners does not require that the crew should divide according to each man's catchings, but gives the skipper and the crew one half, and leaves them to divide as they please, and it is optional with them all, or any two or more of them, to "heave together," as the phrase is, if they please. The owners, in the one species of fishery, as well as the other, furnish all the stores, provisions, and outfits, and the crew are paid according to the success of the enterprise. I think that, under this contract, the crew are rather to be deemed hired seamen than partners or joint contractors. It has long been decided that, in the whale fisheries, the crew have no specific property in the oil, but only a right to the proceeds of the oil; and the contract in this case seems to give the owners the right to sell the fish, and the crew have only a pecuniary claim, calculated upon the amount of fish caught. Baxter v. Rodman, 3 Pick. 435; Grozier v. Atwood, 4 Pick. 234; Bishop v. Shepherd, 23 Pick. 492; Reed v. Hussey [Case No. 11,-646].

In construing the recent act of congress [9 Stat. 515] prohibiting flogging in "vessels of commerce," it has been decided by the circuit court for this circuit, on full deliberation, that it covered vessels engaged in the whale fishery. U. S. v. Cutler [Case No. 14,-910]. One ground of the decision was, that all the power congress has, under the constitution, to regulate vessels, is derived from the power to "regulate commerce," and it is under this clause alone, that it regulates the registry and license of fishing vessels, the payment of bounty to them, and the discipline of men in the whale and cod fisheries.

As to the usage, the evidence is strong to the effect that men have not been treated for sickness, and have not desired to be so treated, at the ship's expense, in mackerel voyages from the ports of Cape Ann. But I should be slow to set aside a wholesome and well established rule of law, in favor of a local usage, especially when it is so much the interest of the influential people of the place to create such a usage, and those against whom it operates are often ignorant of their rights, or unable to vindicate them.

As to the circumstances of this case, I am inclined to interpret the acts of the libellant, as those of a man who was ignorant of his rights. I am equally satisfied that the master and owners of this vessel supposed him to have no such rights, and that they acted in good faith throughout. The Atlantic [Case No. 620]. Decree for $75, with costs. [An appeal was entered, but the case was subsequently compromised.] [2]