### THE CORNELIA M. KINGSLAND.[1]

#### CAFFRAY v. THE CORNELIA M. KINGSLAND.

*(District Court, S. D. New York. December 10, 1885.)*

1. ADMIRALTY — FISHERMEN NOT "SEAMEN" WITHIN SECTION 4523, REV. ST.— LAY.

    Fishermen who ship for a "lay," or shares in the catch, are not "seamen" in the sense of the word as used in section 4523, Rev. St., so as to entitle them, if "shipped contrary to the provision of any act of congress," to recover the highest rate of wages of the port from which they were shipped. *Semble,* that section refers to "merchant seamen."

2. SAME—ORAL AGREEMENT TO SHIP—SECTION 4391, REV. ST.—ACT OF JUNE 19, 1813.

    The shipping of fishermen by oral agreement, and on terms different from section 4391, is not contrary to law, in the sense of section 4523. Section

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

4391, drawn from the act of June 19, 1813, which provides that agreements with men to be employed in certain fishing voyages shall be not only in writing, but in a particular form of "lay" only, is mainly the wording of section 4 of the act of February 16, 1792, and of subsequent acts, which had reference to bounties expected to be given to the fishermen. The act of 1813 is to be construed *in pari materia*. The intention of those acts was not to prohibit fisheries on any different terms, but to allow fishermen to take advantage of the bounties. An engagement for a different form of lay, and not in writing, would not, therefore, be "contrary to the provisions of any act of congress," in the sense of section 4523, or unlawful, but would only be excluded from the bounty system.

**3. SAME—STATEMENT OF CASE—COD AND MACKEREL FISHERIES.**

Libelant shipped for the cod-fishery, under an oral agreement to serve as fisherman, and to share equally with the master in the proceeds of the sale of the fish, after paying expenses and a certain share of the fish to the owners of the vessel. The fishing voyages not being successful, he filed a libel under section 4523, Rev. St., to recover, for the whole season, $40 a month, the highest rate of wages at the port of New York during the three months previous. *Held*, that he could not recover.

In Admiralty.

*Alexander & Ash*, for libelant.

*C. & N. D. Lawton*, for respondent.

BROWN, J. By the agreed statement of facts, the libelant, about the fifteenth of November, 1884, shipped on the schooner Cornelia M. Kingsland, for the cod-fishery, upon an oral agreement to serve as fisherman, and to share equally with the master the proceeds of the sale of the fish, after deducting from such proceeds all the store bills and expenses of the vessel, and the wages of the rest of the crew that were on monthly wages, and 40 per cent. of the balance to be credited to the owners of the vessel. Under this oral agreement he served as fisherman on several voyages, until the twenty-sixth of November, 1885; but they all proved unsuccessful, and did not realize the expenses. During most of the period he performed the duties of a seaman and of first mate, as is customary for fishermen on shares to do. Nothing being due to the libelant under this oral agreement, this libel was filed under section 4523, Rev. St., to recover $40 per month, which, as it is stipulated, was the highest rate of wages at the port of New York, during the three months previous.

The suit has been brought to test the question whether section 4523 is applicable to fishermen who ship under an oral agreement for a "lay," or shares in the catch. That section is as follows:

"All shipments of *seamen* made contrary to the provisions of any act of congress shall be void, and any seaman so shipped may leave the service at any time, and shall be entitled to recover the *highest rate of wages* of the port from which the seaman was shipped, or the *sum agreed* to be given him at his shipment."

To bring the case within section 4523 it must appear—*First*, that the libelant was shipped as a *seaman* within the meaning of that section; and, *second*, that he was shipped contrary to law. I am not satisfied that either point is established.

1. I have great doubt whether section 4523 was intended to apply

to fishermen. Fishermen, in the Revised Statutes, and in all our legislation from the inception of the government downwards, have been treated distinctively under the name of "fishermen;" never under the name of "seamen." Seamen in the "merchant service" have been the subject of numerous acts of congress; and fishermen and the fisheries the subjects of numerous other acts. They are always treated of under these distinctive designations. Sections 4392 and 4393 recognize the distinction in express terms. These two classes of mariners have never been confounded in legislation. In the Revised Statutes fishermen and the fisheries are treated of under title 51. Title 53 treats of "merchant seamen." Section 4523 is found in the title relating to merchant seamen. Fishermen, although not necessarily seamen, are in practice usually seamen also; inasmuch as they usually perform seamen's duties, so far as may be necessary, upon the particular voyage. But the object of the voyage is to catch a fare of fish. Their labors as seamen are incidental to this main purpose. Some of the fishermen may be employed to catch fish only; others to fish and to man the ship. The latter are seamen and more. As seamen, they are indeed entitled to the benefits of the marine law applicable to seamen; such as the right to be cured at the ship's expense. *Knight* v. *Parsons*, 1 Spr. 279. But the question here is not as to the rights of fishermen as seamen under the marine law, but as to the intention of this particular section of the statute, which is found, not in the title relating to "fishermen," but in the title relating to "merchant seamen."

Section 4523 is taken from section 10 of the act of July 20, 1840, (5 St. at Large, p. 395,) and section 15 of the act of June 7, 1872, (17 St. at Large, p. 265.) The act of July 20, 1840, does not in its title express whether it is designed exclusively for seamen in the merchant service or not. Most, if not all, of the sections of that act show that it has reference to the merchant service; while section 15 of the act of June 7, 1872, shows clearly by its context that it applies to merchant seamen, of whom that section treats, and to merchant seamen only. The phrase "the highest rate of wages of the port from which the seaman shipped," is the language of the act of 1872, not of the act of July 20, 1840. These considerations, as it seems to me, point strongly to the conclusion that section 4523 was designed for merchant seamen only, as its place in the Revised Statutes would naturally indicate. There are, indeed, a few sections in title 53 that are applicable to fishermen, because fishermen, in those sections, are expressly mentioned. See sections 4569, 4573, 4576. But the express mention of the fisheries in these sections would indicate, in connection with the caption of title 53, their intended exclusion from the other sections of that title, in which the fisheries are not named.

2. The language of section 4523 is not apt, and does not seem intended, for a case like the present. It provides that the seaman shall be entitled "to recover the highest rate of wages of the port at which

he was shipped, *or the sum agreed to be given him.*" The latter alternative seems to indicate that the act has in view cases only in which the ordinary mode of shipping is on wages and at some definite sum of money; not cases in which the ordinary course of employment is not on wages strictly, but on a "lay." Here there was no "sum agreed" on. An agreement for a "lay" is subject to a general average contribution, to which wages are not subject. *Utpadel* v. *Fearse,* 1 Spr. 559.

3. Again, there is a further difficulty in this case in holding that shipments of seamen not in writing are "contrary to the provisions of any act of congress," within the meaning of section 4523. There is no act of congress *prohibiting* the employment of fishermen under an oral agreement; nor is there any act that requires agreements with fishermen to be in writing, other than section 4391. That section reads as follows:

"The master of any vessel * * * to be employed in the cod or mackerel fishery at sea shall, before proceeding on such fishing voyage, make an agreement in writing with every fisherman who may be employed therein; * * * and, in addition to such terms of shipment as may be agreed on, shall, in such agreement, express whether the same is to continue for one voyage or for a fishing season, and shall also express that the fish, or proceeds of such fishing voyage or voyages, which may appertain to the fishermen, shall be divided among them in proportion to the quantities or number of such fish which they may respectively have caught."

The language of the act of 1813 is the same. This act does in terms require the agreement with fishermen to be in writing; but it also requires much more, viz.: that "such agreement shall express that the fish, or the proceeds of the voyage, that may appertain to the fishermen, *shall be divided among them in proportion to the quantities or number which the fishermen may respectively have caught.*"

The statute, clearly, cannot be divided up into parts, and the different clauses enforced separately and independently of each other. It follows, therefore, either that this act is intended to be applied only to those fishing voyages that are carried on, or intended to be carried on, upon the mode of dividing the fish referred to in the statute, and requiring such agreement to be in writing, and to express that intention; or else that it makes unlawful all fishing voyages upon a "lay" in the cod and mackerel fisheries, unless the fishermen agree to divide the fish or the proceeds according to what each catches, and not in any other manner, or in any different proportions. The effect of the latter construction would be to prohibit the fishermen in these fisheries to "heave together," which is the usual form of the "lay" in the whale fishery. Upon this latter construction, moreover, the agreement in this case, even though it had been in writing, would have been equally illegal and "contrary to the act of congress," because the master and the mate were to share *equally* in the fish, instead of according to what each caught. Is it possible that the statute intended so unreasonable a restriction, and to prohibit en-

tirely, and to make unlawful, in the cod and mackerel fisheries, what is the usual practice in the whale fishery?

The early legislation on the subject of fisheries seems to me to shed some light upon the probable intention of the statute. Sections 1, 2, pp. 229, 230, of the act of February 16, 1792, (1 St. at Large, p. 230,) granted for a certain period allowances or bounties to vessels engaged on the "bank, and other cod-fisheries," of which allowances three-eighths parts were to accrue and belong to the owner of such fishing vessel, and the other five-eighths thereof were to be divided by him * * * to and among the several fishermen who shall have been employed in such vessel, * * * in such proportions as the fish they shall respectively have taken * * * during such season." Section 4 of the same act provided "that no ship or vessel * * * shall be entitled to the allowance granted by this act, unless the skipper or master thereof shall, before he proceeds on any fishing voyage, make an agreement, in writing or in print, with every fisherman employed therein; * * * and, in addition to such terms of shipment as may be agreed on, shall, in such agreement, express whether the same is to continue for one voyage or for the fishing season, and shall also express that the fish, or the proceeds of such fishing voyage or voyages which may appertain to the fishermen, shall be distributed among them in proportion to the quantities or number of said fish they may respectively have caught." The allowances provided by the first and second sections of the act of 1792 were made permanent by the act of July 29, 1813, (3 St. at Large, p. 49,) and section 5 of the act of March 3, 1819, (Id. p. 520,) until repealed by the act of July 28, 1866, (14 St. at Large, p. 328, § 4.) Section 4 of the act of February 16, 1792, above quoted, it will be observed, has the identical language of the act of June 19, 1813, and of section 4391 of the Revised Statutes. The act of 1792 was limited by section 9 to the term of seven years, and thereafter to the end of the next session of congress. The manifest object of section 4 of that act was not to make fishing voyages unlawful that were carried on upon different terms from those last specified, but only to exclude them from the benefits of the allowances and bounties provided by that act.

After the expiration of that act, and of the extension thereof, (see 2 St. at Large, p. 36,) the same subject was treated of by the Thirteenth congress, in two acts, instead of in one act, as before. The first of these is the act of June 19, 1813, in almost the precise language of section 4391, Rev. St., which required the agreement to be in writing; the second, is the act of July 29, 1813, (2 St. at Large, 5, 6,) which provided for the bounties or allowances to be paid to such vessels. Section 8 of this act refers to the preceding act of June 19, and provides that no allowance shall be granted unless the master shall have made the agreement in writing, as provided by that act. By act of March 3, 1865, (13 St. at Large, 535,) the first section of

the act of June 19, 1813, was made applicable to the mackerel fisheries. The two acts of 1813, above cited, were passed by the same congress, and within a few weeks of each other; they are evidently *in pari materia*, and must be construed in reference to each other, and with reference, also, to the further fact that the usual mode of carrying on the cod-fisheries at that time was upon a "lay," and to divide according to what each man caught. Thus construed, there is much ground for the inference that the intention of the act of June 19, 1813, was not to forbid the bank or cod-fishing voyages altogether except upon the terms named; but only to provide that vessels fishing upon a "lay," and in accordance with the custom of the time, and looking for the bounties intended to be provided by congress, should put their agreements in writing, having the required stipulations expressed in the writing, so that upon filing the agreement with the collector, as the act required, the evidence should be clear and indubitable of the right to the bounties intended to be secured to the seamen; and that only such vessels, and fishermen engaging upon such terms, should be entitled to the bounty and to the other liens and privileges specified in the acts of congress. Such is the intent that expressly appears in the act of 1792. The shipment of fishermen on other terms is not expressly forbidden by the act of June 9, 1813; and if the above was the true object of that act, its intention was not to prohibit all fisheries upon any different terms. A different form of engagement, not in writing, and not contemplating the kind of fishing service which that act had in view, would not, therefore, be held to be an engagement "contrary to the provisions of the act of congress," in the sense of section 4523, because it was not intended to prohibit different kinds of fishing service. But all different "lays" were excluded from the benefits of the acts of 1813 and of the bounty system. *U. S.* v. *Atkins*, 1 Spr. 558.

Upon the revision of the Statutes the provisions of the act of 1813 were retained, although bounties had been repealed in 1866; because there were other provisions in the act of June 19, 1813, that gave certain liens and advantages to fishermen in the way of security for their shares of the fish in case they should choose to ship according to the particular mode formerly in use and contemplated by the statute. Section 4393, 4394. The re-enactment of the old law under such circumstances, although bounties were abolished, should not necessarily, in my judgment, be regarded as intended to prohibit any different form of the mackerel or cod fishery from the one specified, so as to make a shipment of fishermen upon any different terms, or not in writing, a shipment "contrary to the provisions of the act of congress," within the meaning of section 4523.

Fully recognizing the embarrassments that attend the question here presented, I am of the opinion, on the whole, that section 4523 is not applicable to the fishermen who engage upon a lay, and that the libel should be dismissed; but without costs.