# United States Court of Appeals
## For the First Circuit

No. 04-1242

TIMOTHY DOYLE; GREG HAGAMAN; BRIAN LAGUE;
ANTHONY W. RICHARDS; ERIC EDWARDS,

Plaintiffs-Appellees/Cross-Appellants,

v.

HUNTRESS, INC.; RELENTLESS, INC.,

Defendants-Appellants/Cross-Appellees,

GREG BRAY; KYLE GOODWIN,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Martin K. DeMagistris, with whom J. Renn Olenn and Olenn &
Penza, LLP, were on brief, for appellants.
Merlyn P. O'Keefe, with whom Packer & O'Keefe was on brief,
for appellees.

August 12, 2005

**TORRUELLA**, **Circuit Judge**.  The issue presented in this interlocutory appeal is whether the 1983 codification of the maritime safety laws in Title 46 creates a cause of action for lay share fishermen under the "highest rate of wages" provision of 46 U.S.C. § 11107, and the liability provisions of 46 U.S.C. § 10601. We hold that it does.

## I.

This appeal arises out of a compensation dispute between plaintiffs-appellees, Timothy Doyle, Greg Hagaman, Brian Lague, Anthony W. Richards, and Eric Edwards ("the fishermen"), former deckhands on the fishing vessels the PERSISTENCE and RELENTLESS, and the corporate owners of the fishing vessels, defendants-appellants Huntress, Inc. and Relentless, Inc.  The fishermen brought suit against the vessel owners in the United States District Court for the District of Rhode Island, alleging that the vessel owners failed to comply with 46 U.S.C. § 10601 (1988), which requires, among other things, that the owners of a fishing vessel make a written fishing agreement with each seaman employed prior to the voyage.  Plaintiffs claimed statutory damages under a companion statute, 46 U.S.C. § 11107 (1983).  The defendant owners moved for summary judgment, alleging that (1) their lay share fishing agreements did not violate section § 10601, (2) § 11107 does not create a remedy for lay share fishermen, and (3) plaintiffs' claims are barred by waiver and laches.  The district court concluded that

-2-

the vessel owners violated the requirements of § 10601, Doyle v. Huntress, 301 F. Supp. 2d 135, 145 (D.R.I. 2004), and concluded that "§ 11107 applies to lay-share fishermen, and may be utilized by Plaintiffs as a statutory default wage in place of their void contracts with Defendants." Id. at 148. The district court thus granted summary judgment in favor of the fishermen as to the application of §§ 10601 and 11107 to their claims. However, the district court found that genuine issues of material fact remained in dispute as to the defendants' defenses of laches and waiver, thus necessitating trial. The district court stayed the proceedings below pending resolution of this interlocutory appeal.

Plaintiffs-appellees served as deckhands and crewmen aboard the fishing vessels PERSISTENCE and RELENTLESS at various times from 1993 until 2000. The vessels are 125-foot, steel hulled freezer trawlers, weighing in excess of twenty tons each, and operating out of the Port of Davisville in North Kingstown, Rhode Island.

As is typical in the fishing industry, the vessel owners used the "lay share system" to compensate the fishermen they employed. The owners generally employed a crew of ten to thirteen per trawler for commercial fishing voyages along the New England and mid-Atlantic coastline. Upon completion of a fishing voyage the vessel owners sold the catch and deducted the trip expenses from the profit. The remaining profit was then be divided, with

the vessel owner retaining more than half of the profits -- usually between 58 and 61 percent -- and the remaining proceeds being divided among the crewmen in the form of "lay shares."

The share or fraction of a share each crewman received was determined by the captain of the vessel, based on the fisherman's skills and performance on the voyage. The size of the share was not a product of any written agreement with the fisherman made prior to leaving port, and no fisherman was told before the trip exactly what percentage of the net profit he will receive at the end of the voyage. This determination was left to the discretion of the captain based on the performance of the fisherman during the voyage. After the captain calculated the "share" due each fisherman, the vessel owners issued a check in that amount. More experienced and skilled crewmen are better able to perform highly specialized functions, making them more valuable on a voyage. Thus, fishermen with greater experience received a larger share of the profits than less experienced crewmen.

## II.

We begin with the question of appellate jurisdiction. Although both parties agree that jurisdiction exists in this court to review the district court's order granting partial summary judgment, we have an obligation to inquire sua sponte into our jurisdiction over the matter. Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997).

The underlying action is still pending in the district court and has been stayed until we resolve this question. Thus, the district court's decision and order granting summary judgment to the plaintiffs on their § 11107 claim is not a "final decision" in the sense required by 28 U.S.C. § 1291 (conferring appellate jurisdiction over "final decisions" of the district courts). However, Congress has created statutory exceptions to the final judgment rule, including 28 U.S.C. § 1292(a)(3), which allow immediate appeal from some interlocutory orders. Section 1292 provides that "(a) [T]he courts of appeals shall have jurisdiction of appeals from: . . . (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.". See Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel, 833 F.2d 1059, 1062-64 (1st Cir. 1987). An interlocutory appeal under § 1292(a)(3) applies to any order that conclusively determines the liability of a party, even if the order leaves unresolved an issue which may ultimately preclude recovery by a particular plaintiff. In re S.S. Tropic Breeze, 456 F.2d 137, 139 (1st Cir. 1972). Three prerequisites must be met for this court to have jurisdiction to consider this interlocutory appeal pursuant to § 1292(a)(3): "(1) the underlying case must be an admiralty case 'in which appeals from final decrees are allowed;' (2) the appeal must be from an

interlocutory order or decree of the district court; and (3) the order or decree must have determined 'the rights and liabilities of the parties.'" Wingerter v. Chester Quarry Co., 185 F.3d 657, 663 (7th Cir. 1998) (citing Foulk v. Donjon Marine Co., 144 F.3d 252, 255 (3d Cir. 1998); Martha's Vineyard Scuba Headquarters, 833 F.2d at 1063).

## A. Admiralty Case

The case at hand arises in admiralty and concerns the interpretation of two statutes that regulate the employment of seamen, 46 U.S.C. § 10601 and § 11107. "Whether a case is an admiralty case turns on whether the plaintiff properly designated the action as an admiralty case." Wingerter, 185 F.3d at 664. Federal Rule of Civil Procedure 9(h) governs the designation of admiralty claims:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. . . . A case that includes an admiralty or maritime claim within this subdivision is an admiralty case within 28 U.S.C. § 1292(a)(3).

The district court found that it had jurisdiction over the case below pursuant to 28 U.S.C. § 1331, Huntress, 301 F. Supp. 2d at 140, and also confirmed that "[t]his case concerns a matter of admiralty law," id. at 140; see 28 U.S.C. § 1333. The district

-6-

court specifically noted that plaintiffs alleged subject matter jurisdiction by virtue of this case arising in admiralty. Id. at 140 n.3. As the underlying case was properly designated an admiralty case, it is also an admiralty case for purposes of 28 U.S.C. § 1292(a)(3). See Fed. R. Civ. P. 9(h).

## B. Interlocutory Order

The district court's decision and order of January 13, 2004 was plainly interlocutory because it leaves unresolved the defenses of laches and waiver.

## C. Rights and Liabilities

Finally, to "ascertain whether, for purposes of § 1292 (a)(3), the substantive rights and liabilities of these adversaries were sufficiently determined by the order," Martha's Vineyard, 833 F.2d at 1064, we must identify a decision on the merits of the claims or defenses underlying the dispute which determines substantive rights. Id.

Although the district court's decision and order did not fully resolve the plaintiffs' claims regarding their ultimate damages, it did conclusively determine the substantive grounds of the complaint. The district court determined that defendants (the vessel owners) had violated the requirements of § 10601 in the fishing agreements they entered into with plaintiffs (the fishermen). Huntress, 301 F. Supp. 2d at 146. In addition, the court determined that § 11107 applies to lay share fishermen and

therefore could "be utilized by Plaintiffs as a statutory default wage in place of their void contracts with Defendants." Id. at 148. Thus, the district court found that plaintiffs were statutorily entitled "to recover 'the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher.'" Id. at 146 (quoting 46 U.S.C. § 11107). Therefore, the district court granted partial summary judgment to plaintiffs as to the application of § 10601 and § 11107. We are satisfied that the district court's ruling meets the substantive "rights and liabilities" prerequisite of § 1292(a)(3). We conclude, therefore, that we have jurisdiction to hear this interlocutory appeal.

## III.

We now turn to the merits. The question before this court on interlocutory appeal is whether the 1983 partial codification of the maritime laws created a cause of action for "lay share" fishermen under the "highest rate of wages" provision of 46 U.S.C. § 11107, and the liability provisions of 46 U.S.C. § 10601. A question of statutory construction presents a purely legal question; therefore, we review de novo. See Strickland v. Comm'r Maine Dep't of Human Serv., 96 F.3d 542, 545 (1st Cir. 1996).

Section 11107 provides as follows:

An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged

-8-

> may leave the service of the vessel at any time and is <u>entitled to recover the highest rate of wages</u> at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher.

46 U.S.C. § 11107 (1983) (emphasis added).

Ordinarily, "[t]he starting point in discerning congressional intent is the existing statutory text." <u>Lamie</u> v. <u>United States Tr.</u>, 540 U.S. 526, 534 (2004). "'[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" <u>Dodd</u> v. <u>United States</u>, --- U.S. ---, 125 S. Ct. 2478, 2483 (2005) (quoting <u>Hartford Underwriters Ins. Co.</u> v. <u>Union Planter's Bank, N.A.</u>, 530 U.S. 1, 6 (2001)).

However, it is well established that there is a presumption against change in codification statutes. "[I]t will not be inferred that Congress, in revising and consolidating laws, intended to change their effect, unless such intention is clearly expressed." <u>Fourco Glass Co.</u> v. <u>Transmirra Prods. Corp.</u>, 353 U.S. 222, 227 (1957); <u>see also</u> <u>United States</u> v. <u>Ryder</u>, 110 U.S. 729, 740 (1884) (same); <u>Tidewater Oil Co.</u> v. <u>United States</u>, 409 U.S. 151, 162 (1973) ("[T]he function of the Revisers of the 1948 Code was generally limited to that of consolidation and codification. . . . [c]onsequently, a well-established principle governing the interpretation of provisions altered in the 1948 revision is that

-9-

'no change is to be presumed unless clearly expressed.'") (quoting Fourco Glass Co., 353 U.S. at 227)).

In this case, defendants-appellants contend that we must look beyond the plain meaning of the text of the statute to legislative history because the exclusionary companion statute to § 11107's predecessor -- which expressly excluded seamen entitled to earn lay shares from entitlement to the "highest rate of wages" -- was repealed in the course of the 1983 partial recodification of Title 46.  See 46 U.S.C. § 544 (repealed 1983) (excluding any vessel "where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage" from, among other wage statutes, the "highest rate of wages" predecessor to § 11107).  The repeal of this exemption constitutes a major change, which defendants-appellants argue should not be inferred. Defendants-appellants point out that all of the other exemptions that were previously under § 544 were recodified in other locations, and § 11107 is the only wage statute that applies to share fishermen in the recodification.  Therefore, defendants-appellants conjecture that this exemption must have been inadvertently deleted during the 1983 codification.

Given the presumption against change in codification statutes and the significant, unannounced change Congress made in the 1983 recodification to the application of the "highest rate of wages" provision to seamen earning lay shares, we agree that it is

-10-

appropriate to go beyond the plain meaning of the text of the statute and consider the legislative history.

Another significant factor that we must consider in our construction of this statute is the presumption in favor of seamen. "[L]egislation for the benefit of seamen is to be construed liberally in their favor." McMahon v. United States, 342 U.S. 25, 27 (1951). See also Isbrandsten Co. v. Johnson, 343 U.S. 779, 782 (1952) ("Whenever congressional legislation in aid of seamen has been considered here since 1872, the Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of the seamen."). This holds true for statutes concerning seamen's wages and penalty wages. "'[T]he maritime law by inveterate tradition has made the ordinary seaman a member of a favored class. He is a 'ward of the admiralty,' . . . . Discrimination may thus be rational in respect of remedies for wages.'" Isbrandsten, 343 U.S. at 782-83 (quoting Warner v. Goltra, 293 U.S. 155, 162 (1934)). See also Forster v. Oro Navigation Co., 228 F.2d 319, 319-20 (2d Cir. 1955) (penalty wages "statute, designed to protect seamen, must be liberally interpreted for their benefit").

## A. History of the "highest rate of wages" provision

The substance of the "highest rate of wages" provision was not new when § 11107 was enacted in 1983. In 1840, Congress

enacted the statute that eventually became 46 U.S.C. § 11107.[1] Act of July 20, 1840, ch. 48, 5 Stat. 395 (current version at 46 U.S.C. § 11107 (1983)).[2] This statute entitled all seamen engaged contrary to the provisions of any act of Congress to the highest wage paid at the port of engagement, or to the agreed wage.[3] At that time, there was no provision excluding fisherman employed aboard lay share vessels from this "highest rate of wages" statute.

---

[1] Title 46 actually contains two "highest rate of wages" provisions that are substantially the same: 46 U.S.C. §§ 10508 and 11107. The predecessor to § 10508 was one of the first acts of Congress in 1790 and applied to merchant ships operating in the coastwise shipping industry. Act of July 20, 1790, ch. 29, § 1, 1 Stat. 131 (current version at 46 U.S.C. § 10508 (1996)). It provided the highest rate of wages to a seaman employed on a voyage without an agreement satisfying the requirements of the predecessor to the current § 10502. Id. By its express terms, the 1792 statute remained in force for only seven years. Congress extended it in 1800 and eventually replaced it in 1813 with a successor statute that has remained substantially unchanged ever since. Act of June 19, 1813, ch. 2, § 1, 3 Stat. 2. From its inception, this "highest rate of wages" provision applied only to the coastwise merchant shipping industry and is not relevant to this dispute.

[2] The 1840 statute, ch. 48, 5 Stat. 394, was revised in 1872, becoming R.S. 4523. In 1928 Congress codified the statute as 46 U.S.C. § 578, the immediate predecessor to § 11107.

[3] The language of the 1840 Act has not changed much over the years. The 1840 Act provided:

> All shipments of seamen, made contrary to the provisions of this and other acts of Congress, shall be void; and any seaman so shipped may leave the service at any time, and demand the highest rate of wages paid to any seaman shipped for the voyage, or the sum agreed to be given him at his shipment.

5 Stat. at 395.

During the mid- to late-1800s, however, several federal courts concluded that a lay share is not a wage within the purview of the "highest rate of wages" statutes. See Caffray v. The Cornelia M. Kingsland, 25 F. 856, 858-59 (S.D.N.Y. 1885); The Ianthe, 12 F. Cas. 1145 (D. Me. 1856). Then, as part of the 1872 Shipping Commissioners Act, which imposed new regulations on the burgeoning foreign and intercoastal shipping industry, Congress excluded share-based vessels from multiple statutes, including the highest rate of wages statute. See Shipping Commissioners Act of 1872, ch. 322, 17 Stat. 262 (1872) (repealed). These exemptions were later consolidated in § 544. See 46 U.S.C. § 544 (repealed 1983) (excluding coastwise vessels and any boat "where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage" from many regulatory statutes reserved for vessels engaged in foreign shipping, including the "highest rate of wages" predecessor to § 11107).[4] Thus, prior to 1983, lay share vessels were explicitly excluded from the "highest rate of wages" provision of the predecessor statute to § 11107.

More than one hundred years later, as part of its on-going effort to recodify all of the United States Code, Congress passed an act recodifying the maritime statutes in Title 46. In the course of this revision, the exclusionary statute, § 544, was

---

[4]  Section 544 succeeded an older exemptive revised statute that was adopted in 1874. Act of Aug. 9, 1874, c. 260, 18 Stat. 64.

-13-

repealed. It was replaced, for the most part, however, by individual exclusions where appropriate. The exclusion of share-based vessels from the "highest rate of wage" statute, however, was not replaced.

## B. Legislative Intent

The "presumption that codification is not intended to make changes of substantive law . . . is particularly true where . . . the legislative history shows a positive disclaimer of any such intent." United States v. Standard Accident Ins. Co., 280 F.2d 445, 447 (1st Cir. 1960) (citing United States v. Sischo, 262 U.S. 165, 168-69 (1923); Washington v. Maricopa County, Ariz., 152 F.2d 556, 559 (9th Cir. 1945)). However, we would be hard put to find that Congress showed a "positive disclaimer of any such intent" in this case. This circuit previously noted that the signals in the legislative history of the revision are mixed. United States v. Rivera, 131 F.3d 222, 226 (1st Cir. 1997). "[T]he stated purpose of the legislation was simply to recodify in an organized fashion the then-existing law relating to the safety of vessels and protection of seamen."[5] Id. Both the Senate and House Reports emphasize repeatedly that no substantive changes of a

---

[5]   House Report No. 98-338 states: "The ultimate aim of this legislation is three-fold: to make maritime safety and seamen protection law easier for the Coast Guard to administer, to make it less cumbersome for the maritime community to use, and to make it more understandable for everyone involved." H.R. Rep. No. 98-338, at 113, reprinted in 1983 U.S.C.C.A.N. 924, 925.

-14-

controversial nature were intended.  See S. Rep. No. 98-56, at 1 ("The purpose of S. 46, as reported, is to restate without substantive changes of a controversial nature, the existing laws . . . governing commercial shipping and navigation and recreational boating, principally contained in title 46 of the U.S. Code."); H.R. Rep. No. 98-338, at 113, reprinted in 1983 U.S.C.C.A.N. 924 (same).  The Senate Report even cited to Supreme Court case law discussing the presumption against substantive change as follows: "In a codification statute . . . the courts uphold the . . . presumption: no change in law is intended unless clearly expressed."  S. Rep. No. 98-56, at 10 (citing Fourco Glass Co., 353 U.S. at 227; Tidewater Oil Co., 409 U.S. at 162; Muñiz v. Hoffman, 422 U.S. 454, 467-74 (1975)).

Despite these disclaimers, Congress anticipated questions about the substantive revisions made to the laws.

> The committee wants to make it clear . . . that the bill . . . does in fact make a great many substantive changes to the present law. Those changes are all either minor changes, adjustments, or modifications, or they are more significant changes to which the Committee received no objection and which the Committee believed would enhance the clarity and effectiveness of the law and the [sic] generally accepted by the industry. Thus, if a comparison of the language of this bill with the existing law shows that a substantive change has resulted, it should be understood that that change was intended by the Committee. The Committee intends and hopes that the interpretation of the maritime safety laws as codified and enacted by this bill will be based on the language of the bill itself.

-15-

The bill, as reported, is based on that premise. There should, therefore, be little or no occasion to refer to the statutes being repealed in order to interpret the provisions of this bill. The Committee also feels, as the courts have held, that the literal language of the statute should control the disposition of cases. <u>There is no mandate in logic or in case law for reliance on legislative history to reach a result contrary to the plain meaning of the statute</u>, particularly where that plain meaning is in no way unreasonable.

H.R. Rep. No. 98-338, at 120, <u>reprinted in</u> 1983 U.S.C.C.A.N. 924, 932 (emphasis added).

Appellants point to <u>Carbo</u> v. <u>United States</u>, 364 U.S. 611 (1961), in which the Supreme Court rejected the claim that Congress had substantively changed the law in a new codification statute, explaining that "[a]fter almost two hundred years, we cannot now say it has been abandoned by a Congress which expressly said it intended to make no substantive changes." <u>Id.</u> at 620. But in the present case, Congress expressly stated that it had "in fact ma[d]e a great many substantive changes to the present law." H.R. Rep. No. 98-338, at 120. Thus, although Congress disclaimed any intent to make substantive, controversial changes, Congress recognized that it made many substantive changes and stated that where "the existing law shows that a substantive change has resulted, it

-16-

should be understood that that change was intended by the Committee."  H.R. Rep. No. 98-338, at 120.[6]

While the direction in the House Report is clearly to rely on the plain meaning when interpreting the new statutes, the Report also indicates that "the <u>committee intended to make no substantive changes that were objected to</u> by any affected party or that the committee felt would be a significant change in maritime policy or <u>that would adversely affect any rights, benefits, or duties of those impacted</u> by this bill."  <u>Id.</u> at 120 (emphasis added).   The vessel owners argue that repeal of the exclusion of lay share fishermen from the "highest rate of wages" provision adversely affects the owners of commercial fishing vessels. However, although the vessel owners cite the testimony of a representative of the fishing industry before Congress, they have not identified any instance in which any affected party objected to the repeal of this exclusion as the revision wound its way through Congress.[7]  As Congress stated:

---

[6]  In addition, there is precedent "that where a revising statute, or one enacted for another, omits provisions contained in the original act, the parts omitted cannot be kept in force by construction, but are annulled." <u>Stewart</u> v. <u>Kahn</u>, 78 U.S. 493, 502 (1870).

[7]  In a brief statement before Congress, James P. Walsh, representing the American Tuna Boat Association, endorsed the Act but warned that merchant marine policy is a complicated area of law and "encourage[d] the committee to follow the implementation of the statute to assure that there is in fact no major inadvertent change or no major modifications through administrative interpretation." Joint Hearing of Subcommittees on Coast Guard and Navigation and

> The maritime community has been aware of and
> has actively participated in this revision of
> the maritime safety laws since 1980 when the
> project was in its initial stages within the
> Coast Guard.  Provisions in the early draft
> that were objectionable have been removed or
> altered.  The <u>remaining substantive changes
> are deemed noncontroversial by virtue of the
> fact that there has been no objection raised
> to them during the two and one half years in
> which the maritime community has examined and
> commented on each successive draft</u>.

H.R. Rep. 98-338, at 119-20 (emphasis added).

Because the legislative history provides mixed signals, we do not apply the presumption of recodification that Congress did not intend substantive changes.

## C.  Scrivener's error?

If appellants believe that Congress inadvertently removed the provision during the course of the 1983 revision, then their proper course of action would be to request that Congress correct the alleged error by re-enacting the exclusionary language. Appellants-defendants cite to the recent Supreme Court case, <u>Koons Buick Pontiac GMC, Inc.</u> v. <u>Nigh</u>, --- U.S. ---, 125 S. Ct. 460 (2004), and ask us to follow the recommendation of the concurring opinion of Justices Stevens and Breyer by following "common sense" rather than giving effect to a "scrivener's error."  <u>Id.</u> at 470 (Stevens, J., concurring).  However, "[i]f Congress enacted into law something different from what it intended, then it should amend

Merchant Marine, Committee on Merchant Marine and Fisheries, April 28, 1983, 493-94.

-18-

the statute to conform it to its intent.  It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result."  <u>Lamie</u> v. <u>United States Trustee</u>, 540 U.S. 526, 542 (2004) (internal quotation marks and alteration omitted).  <u>See also</u> <u>Koons Buick</u>, 125 S. Ct. at 476 (Scalia, J., dissenting) (same).

**D.  The Common Law**

Defendants-appellants also argue that the statutes at issue here do not create a cause of action under the "highest rate of wages" provision for lay share fishermen because the common law principle was, and still remains, that statutory wage provisions do not generally apply to fishermen earning lay shares.  In support of this argument, the vessel owners point to two nineteenth century cases that declined to apply the old "highest rate of wages" provision to fishermen earning lay shares, despite the absence of a statutory exclusion for lay share fishermen.  <u>See</u>, <u>e.g.</u>, <u>The Cornelia M. Kingsland</u>, 25 F. at 857-61 (treating "fishermen" differently than "seamen"); <u>The Ianthe</u>, 12 F. Cas. at 1145.

In <u>The Cornelia M. Kingsland</u>, several lay fishermen brought a claim under a predecessor to § 11107 -- § 4523 of the Revised Statutes -- seeking the "highest rate of wages."  The Southern District of New York held against the fishermen because it found that (1) the "highest rate of wages" provision was intended to apply to seamen, and that "fishermen" had been treated as

-19-

distinct from seamen in all legislation; (2) the language of the provision seemed more appropriate to a seaman earning a "sum agreed" upon rather than an agreement for a "lay" subject to general average distribution; and (3) that engaging seamen through oral contracts was not "contrary to the provisions of any act of Congress" because no act of Congress required that agreements with fishermen be in writing at that time. The Cornelia M. Kingsland, 25 F. at 857-61. In The Ianthe, lay share fishermen made a similar claim and the District Court of Maine also found that the Act made no provision for fishermen employed without a written agreement. 12 F. Cas. at 1145.

Times have changed, and we see no reason to rely on these cases in our decision today. First, this court observed as early as 1899 that "[f]ishermen are seamen, having uses and customs peculiar to their business, but are at the same time, except as modified by their peculiar contracts, express or implied, protected by law as other seamen are. For their wages they can look to the vessel, her master, and ordinarily her owners." The Carrier Dove, 97 F. 111, 112 (1st Cir. 1899); see also Cromwell v. Slaney, 65 F.2d 940, 941 (1933) (same); Tran v. Captain Glyn, Inc., 909 F. Supp. 727, 732 (D. Haw. 1995) ("Fishermen are seamen under the Jones Act, for the purpose of maintenance and cure, and wage relief."). Second, as we discuss more fully below, we do not find that the disparity between determining the amount a wage-earning

seaman and a lay share-earning fisherman should receive bars application of the "highest rate of wages" provision to lay share fishermen. We agree with the Ninth Circuit that § 11107 should be construed as "entitl[ing] the wronged seaman to recover either his promised wages or the highest rate of wages of a seaman of comparable rating at the port from which he was engaged, whichever is higher." TCW Special Credits v. Chloe Z Fishing Co., 129 F.3d 1330, 1334 (1997) (emphasis added). Third, unlike what the court found in The Cornelia M. Kingsland, there is a violation of an act of Congress in this case; thus the fishermen were engaged contrary to law. Section 10601 is the liability section, and it clearly lays out requirements for fishing agreements.[8] The district court

---

[8] During the time the fishermen were employed aboard the PERSISTENCE and RELENTLESS, § 10601 provided that:

> (a) Before proceeding on a voyage, the master or individual in charge of a fishing vessel, fish processing vessel, or fish tender vessel shall make a fishing agreement in writing with each seaman enployed [sic] on board if the vessel is--
>     (1) at least 20 gross tons ...; and
>     (2) on a voyage from a port in the United States.
> (b) The agreement shall also be signed by the owner of the vessel.
> (c) The agreement shall--
>     (1) state the period of effectiveness of the agreement;
>     (2) include the terms of any wage, share, or other compensation arrangement peculiar to the fishery in which the vessel will be engaged during the period of the agreement; and
>     (3) include other agreed terms.

46 U.S.C. § 10601 (1988).

-21-

determined that the vessel owners failed to meet those requirements.

Furthermore, the statutes considered in The Cornelia M. Kingsland and The Ianthe, which are older versions of § 10601 and § 11107, have been repealed and replaced with new code sections multiple times. As the Alaska Supreme Court noted in Bjornsson v. U.S. Dominator, Inc., reliance on the older statutes is misplaced. 863 P.2d 235, 239 (Alaska 1993). Therefore, rather than relying on these outdated cases, we focus on interpreting the applicable statue, § 11107.

## E.  Our reading of the statute

The most natural meaning of the text of § 11107 is that it declares "[a]n engagement of a seaman contrary to a law of the United States is void," and provides remedies for the seaman. 46 U.S.C. § 11107.

The "cardinal rule [is] that a statute is to be read as a whole . . . , since the meaning of statutory language, plain or not, depends on context." Conroy v. Aniskoff, 507 U.S. 511, 515 (1993). Section 11107 is located in Part G, "Merchant Seaman Protection and Relief," of Subtitle II of Title 46. "The provisions of Part G form an interlocking whole and are exclusively concerned with regulating the relationship between seamen and the masters and owners of the vessels in which they set out to sea." Rivera, 131 F.3d at 233 (Torruella, J., concurring). Reading the

-22-

"highest rate of wages" provision in the context of the rest of Part G, it seems appropriate that the provision should be applied to violations of lay share fishing agreements.

The most natural reading of the term "seaman" in § 11107 is that "seaman" encompasses lay share fishermen. Section 11107 provides remedies for a "seaman" who is engaged contrary to law. Section 10101(3) of Part G defines "seaman" as "an individual . . . engaged or employed in any capacity on board a vessel." 46 U.S.C. § 10101(3). This definition appears to encompass fishermen. The vessel owners do not contest the fact that the fishermen are employees of the vessel and serve as crewmen.

In addition, "unlike some other sections within Part G, which specifically exclude lay-share fishermen, § 11107 includes no such provision indicating Congressional intent to limit the statute's application to merchant seamen." Huntress, 301 F. Supp. 2d at 146 (citations omitted).

Furthermore, § 10601, which contains requirements for fishing agreements, describes lay share fishermen as seamen. Section 10601 is a liability section and § 11107 is tied to § 10601 as a remedial provision. Section 10601 is also located in Part G. It was enacted in 1988 when Congress passed the Commercial Fishing Industry Vessel Safety Act of 1988, an Act with broad remedial purposes. By its terms, § 10601 provides that "seamen" are to be protected by the statute. The section specifically includes lay

-23-

share fishermen by providing that "[t]he agreement shall . . . include the terms of <u>any wage, share, or other compensation arrangement</u> peculiar to the fishery in which the vessel will be engaged."  46 U.S.C. § 10601(c)(2) (emphasis added).

Thus, § 10601 places certain requirements on fishing agreements, and if the vessel owners or masters engage a fisherman -- regardless of whether he is earning lay shares or wages -- contrary to the provisions of § 10601, there should be a remedy. Yet, in this instance, where the fishermen have already received a lay share portion of the proceeds from the fishing voyages they participated in, there does not appear to be any other real remedy for the vessel owners' failure to comply with § 10601, absent § 11107.

Appellants contend that the vessel owners' loss of the benefit of a limited statute of limitations when the fishing contracts do not comply with § 10601 is the only remedy available to the fishermen.  See 46 U.S.C. § 10602(a) (1988) ("When fish caught under an agreement under section 10601 of this title are delivered to the owner of the vessel for processing and are sold, the vessel is liable in rem for the wages and shares of the proceeds of the seamen.  An action under this section must be brought within six months after the sale of the fish.").  But, where, as here, the fishermen have already been paid a lay share pursuant to an invalid agreement, the vessel owners' loss of this

six-month limitation fails to provide a remedy.  Under the view that the only penalty is the removal of the six month statute of limitations, the fishermen will get nothing beyond that which they have already received -- lay shares paid in accordance with the invalid contracts.  We also note that there is nothing that says the statute of limitations provision in § 10602(a) is intended to be the exclusive remedy for a violation of § 10601.

Thus, reading § 11107 together with § 10601, we find that the "highest rate of wages" provision is a cause of action available to lay share fishermen when their fishing agreements are contrary to law.  Both the Ninth Circuit and Alaska Supreme Court have reached the same conclusion.  See Flores v. American Seafoods Co., 335 F.3d 904, 912 (9th Cir. 2003) (stating that an agreement that violates the requirements of § 10601 "will trigger the application of 46 U.S.C. § 11107); TCW Special Credits, 129 F.3d at 1333 ("Fishermen hired without articles, contrary to the provisions of section 10601, may avail themselves of the protection afforded seamen by 46 U.S.C. § 11107."); Seattle-First Nat'l Bank v. Conaway, 98 F.3d 1195, 1198 (9th Cir. 1996) (Section "11107 provides for a penalty against vessel owners who employ seamen without written agreements in violation of § 10601."); Bjornsson, 863 P.2d at 240 (holding that §§ 10601 and 11107 apply to lay share fishermen and that "[l]ay share arrangements must be written down to avoid penalties under section 11107").

**IV.**

For the reasons stated, we hold that § 11107 applies to lay share fishermen.

**<u>Affirmed</u>**.