Not the warrant—First. Because it was not a warrant of title, but of acceptance. Second. It is not founded on settlement, but improvement; and if it had recited the consideration to be actual settlement, the recital would have been false in fact, and could have produced no legal or valid consequence.

As to the caveat; the effect of it was to close the doors of the land office against the further progress of the plaintiff in perfecting his title. The dismission of it again opened the door; but still the question as to title is open for examination in ejectment, if brought within six months, and the patent will issue to the successful party.

The plaintiff therefore having failed to show a title sufficient to enable him to recover in this action, it is unnecessary to say any thing about the defendant's title, and your verdict ought to be for the defendant.

The jury found for the defendant.

---

# Case No. 809.

## The BALIZE.

[1 Brown, Adm. 424.][1]

District Court, E. D. Michigan. June, 1872.[2]

WAGES—SEASON OF NAVIGATION — DESERTION— FORFEITURE—MITIGATING CIRCUMSTANCES.

1. Where a seaman is hired at a certain sum "for the season" of navigation, the presumption is, that the service is for the entire season.

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

[2] [Affirmed by an unreported decree of the circuit court.]

2. The "season of navigation" as understood upon the lakes, comprises the eight months commencing April 1st, and ending November 30th.

3. Leaving a vessel before the expiration of the time of service, without the consent of the master, with the intention not to return, constitutes desertion by the maritime law.

[See The Union, Case No. 14,347; Cloutman v. Tunison, Id. 2,907; The Catawanteak, Id. 2,510.]

4. Such desertion works a forfeiture of all antecedent wages, unless a reasonable excuse be shown, founded upon gross misconduct or harsh usage.

[Cited in U. S. v. Kingsley, 138 U. S. 91, 11 Sup. Ct. 287.]

5. Slight and transient causes, such as the fact that the meat used on board was for a short time slightly tainted, do not constitute such an excuse as to relieve from forfeiture.

[See Ulary v. The Washington, Case No. 14,-323; Magee v. The Moss, Id. 8,944; Coffin v. Weld, Id. 2,953; Relf v. The Maria, Id. 11,692; Coffin v. Jenkins, Id. 2,948.]

In admiralty. Libel of George M. Granger [against the tug Balize] for seaman's wages. [Dismissed.]

The libel set forth the hiring of libellant to serve as sailing master on the tug Balize, at the rate of $1,200 for the season, and five per cent. commission on the net earnings of the tug; that in pursuance of this contract, he entered into the service of the tug about the first of March, and so served until the twentieth of July, and claimed a balance due him of $860.10. The answer admitted the performance of the service substantially as set forth in the libel, but claimed that libellant agreed to serve for the entire season, and that the commission should not exceed three hundred dollars; that he deserted the tug on the twentieth of July, and took with him the mate, two wheelsmen, and the lookout, and that by reason of his desertion, claimants suffered damage in about the sum of $5,000. [For subsequent course of litigation, see note at end of case.]

H. B. Brown, for libellant.

The agreement to serve at $1,200 per season, and five per cent. commission, does not legally import a hiring for the entire season, but for an indefinite time, giving either party the power to terminate the same at pleasure, provided the time and place be reasonable. Heim v. Wolf, 1 E. D. Smith, 70; White v. Atkins, 8 Cush. 367; Rossiter v. Cooper, 23 Vt. 522.

Libellant's leaving the vessel was no desertion as understood by the maritime law. The rigid doctrine of desertion, as administered upon the ocean, has no application to contracts by the season, or service upon harbor tugs; certainly not to persons acting in the capacity of master. But whether this be so or not, claimants ought only to be permitted to recoup the damages actually suffered by his leaving the tug, for nothing is better settled than that desertion does not necessarily work a forfeiture of the entire wages.

2 Pars. Shipp. 94, 100, note 5; Swain v. Howland, [Case No. 13,661;] Macomber v. Thompson, [Id. 8,919;] The Maria, [Id. 9.074;] The Moslem, [Id. 9,875;] The Mentor, [Id. 9,427;] Gladding v. Constant, [Id. 5,468;] Scott v. Russell, [Id. 12,546;] Gifford v. Kolloch, [Id. 5,409;] Cloutman v. Tunison, [Id. 2,907;] The Neptune, [Id. 2,022;] The Elizabeth Frith, [Id. 4,361;] The Martha, [Id. 9,144;] The Union, [Id. 14,347.]

This court should proceed by analogy to a court of common law, and award libellant what his services were really worth to respondents.

Although the court may hold that the unwholesome food furnished by the owner, and his interference in the management of the boat, was not such as to justify a desertion in the ordinary sense of the term, still I claim this may be considered by the court in palliation of the offense, if for these reasons the position of libellant was rendered uncomfortable and disagreeable to him.

An attempt was made to prove a large amount of damage suffered by the claimants, but it failed completely, and was virtually abandoned. There is not a particle of evidence showing that he induced others to leave with him.

Libellant's services in fitting out the vessel, and his board during that time, were all under his contract to serve as sailing master, were incidental and subsidiary to it, and he is entitled to recover for them, though he could not maintain a suit in admiralty for them as an independent cause of action. The Mary, [Case No. 9,190;] The Canton, [Id. 2,388;] The Scattergood, [Id. 11,106;] 2 Pars. Shipp. 185, 186; Wells v. Osman, 2 Ld. Raym. 1044, 6 Mod. 238; The Saratoga, [Case No. 12,355;] Pitman v. Hooper, [Id. 11,185;] The Thos. Jefferson, 10 Wheat. [23 U. S.] 428; The Phoebus, 11 Pet. [36 U. S.] 175; The Gazelle, [Case No. 5,289.].

Libellant is also entitled to recover here his commission upon the earnings which were given him incidentally as part payment for his services. The old doctrine of the English courts, that denied jurisdiction in admiralty wherever a special agreement existed between the seamen and master, was wholly overthrown in Coffin v. Jenkins, [Case No. 2,948,] and since that case was decided, American courts have repeatedly taken cognizance of these claims. Reed v. Hussey, [Id. 11,646;] Tompkins v. Howard, [Id. 14,089;] The Crusader, [Id. 3,456.]

And references are frequently made to an assessor to estimate the net profits. The Hibernia, [Id. 6.455;] The William Martin, [Id. 17,698;] Swain v. Howland, [Id. 13,661;] Hazard v. Howland, [Id. 6,280;] Duryee v. Elkins, [Id. 4,197.]

The obligation to provide proper food, renders it necessary that the master should provide such food as is usual in vessels engaged in that kind of business. The Cyrus, [Id. 3,930;] Foster v. Sampson, [Id. 4,982;] The

Mary Paulina, [Id. 9,224;] Collins v. Wheeler, [Id. 3,018.]

Mr. W. A. Moore, for claimants.

LONGYEAR, District Judge. There was no disagreement between the parties, at the hearing, that the wages of libellant were to be at the rate of $1,200 for the season of navigation, and five per cent. on the net proceeds of the earnings of the tug, but not to exceed $300 in addition to the $1,200. The only matter in dispute in this regard was, whether libellant had the right to leave at any time before the close of the season of navigation, the libellant contending that he had such right, and respondents contending that he had not. The rate of wages being by the season, the presumption is that the service was to be for the entire season. If the contract was different from that, and libellant was to have the right to leave at any time, the burden was upon him to prove it. Libellant testified that he was to have that right. Thomas Murphy, master and part owner of the tug, with whom the contract was made, testified that such was not the contract, that, in fact, nothing of that kind was mentioned. These witnesses being equally interested, and standing in other respects equally fair, the evidence is equally balanced, and the proposition of libellant is not sustained. The case must, therefore, proceed on the basis of a contract to serve for the entire season. The proofs showed that libellant left the service of the tug without consent, and with the intention not to return, before the close of the season; the defense of desertion, therefore, is pertinent, which defense it now remains to consider.

"The season of navigation," as understood here upon the lakes, comprises the eight months commencing April 1 and ending November 30. A contract, therefore, for the season of navigation, whether for wages or otherwise, must be presumed to have been intended to cover that period of time, where nothing to the contrary appears. The contract in this case, therefore, commenced to run April 1, notwithstanding, as appeared by the proofs, the tug did not go into commission and commence running until about April 25. It is in proof that libellant left the vessel, as above stated, July 20. His wages during that period, April 1 to July 20 (three months and twenty days), at $1,200 for the season of eight months would be $550. The five per cent. on the net proceeds was limited by the contract, as we have seen, to $300 in the aggregate, for the entire season. As it was in proof that the five per cent. exceeded that amount, the pro rata share for the three months and twenty days libellant served would be $137 50. This, added to the $550, would make $687 50 pro rata of the wages agreed upon applicable to the time of actual service. From this we would have to deduct $110 paid libellant while he remained in service, leaving a balance of $577 50 as the extent

to which libellant would be entitled to recover in any event. Libellant served one month before the 1st of April, when, as we have seen, his contract commenced to run, overseeing repairs on the tug at Detroit, the home port, and he claims to recover also for that at the contract price. But it clearly did not come within the time limited by the express terms of the contract—the season of navigation; neither did it constitute any part, as incidental or otherwise, of the duties he contracted to perform, viz., those of pilot, or sailing master. Inasmuch, therefore, as that service did not come under the contract, and as at that time there was no lien and no process in rem on account of such service, no allowance could be made for it in the present form of action, in any event. The same reasoning applies to libellant's claim for his board during the same time, and for money loaned to the master.

The question then recurs, is the defense of desertion sufficient to defeat libellant's claim, in whole or in part?

1. As to the fact of desertion. As we have already seen, libellant quit without consent, and, as the proof shows, he did so against the express dissent of the master, and with the intention not to return. This constitutes desertion by the maritime law, unless he has made out a sufficient justification. The grounds of justification sought to be proven, viz., interference with his duties by the master, and unwholesome and insufficient food, I am satisfied are mere after-thoughts, and constituted no part of his reasons for leaving. He never made any complaint, nor did he at the time give those as the reasons for his leaving. In any view of the case, however, I do not consider the justification contended for sustained by the proofs. In fact, I am satisfied from the proofs, that libellant's only reason for leaving was that he had obtained other and perhaps more agreeble employment. The charge of desertion is, therefore, maintained as a matter of fact.

2. As to the effect of the desertion. By the strict rule of the maritime law, desertion works an entire forfeiture of all antecedent wages, and such must be its effect in this case, unless there is something that mitigates the offense. In the case of The John Martin, [Case No. 7,357,] which, like the present, was a case of desertion from a tug-boat, this court made use of the following language: "It is true the kind of service under consideration does not call for the same rigorous application of the law as ocean service, because there the consequences of desertion may be vastly more serious. The court may in its discretion alleviate the rigor of the general rule, and, in view of mitigating circumstances, may impose a less penalty than that of entire forfeiture of wages." To this doctrine I fully adhere. See, also, Lovrein v. Thompson, [Case No. 8,557;] Swain v. Howland, [Id. 13,661;] Gifford v. Kollock, [Id. 5,409;] The Union, [Id. 14,347.] The miti-

gating circumstances, however, must be such as to amount to a reasonable excuse, founded on gross misconduct or harsh usage. Slight and transient causes will not answer, especially where, as in this case, the desertion appears to have been deliberate and premeditated, and not the result of sudden impulse. Neither is it necessary, in order to maintain this defense, that it shall be made affirmatively to appear that any specific damages resulted from the desertion. Where this does appear, however, it will operate as an aggravation. Where, however, it is made affirmatively to appear that no damages resulted or could have resulted, the rule may be applied perhaps with less rigor.

The excuses contended for at the hearing, were: first, that the master interfered with libellant in the discharge of his duties; and, second, unwholesome and insufficient food. These have already been noticed in connection with the question of justification for desertion, and they were held insufficient for that purpose. Did they amount to a reasonable excuse? The proofs show that the only interference with libellant's duties by the master, consisted in orders, directions and advice to the former as pilot and sailing master, where to go and what to do in the employment of the boat. This was clearly nothing more than a legitimate exercise of the powers and functions of master, and did not constitute even a shadow of ground for complaint. The complaint of insufficiency of food is wholly unsupported by the proofs. The proofs show, however, that for a short time, meat was used that was slightly tainted. This, however, was but transient and of short duration; and the master explains that it was owing to circumstances at the time beyond his control. Libellant evidently so considered it, because he made no complaint of it at the time, and he remained in the service a considerable time after this cause of complaint had ceased. I am satisfied from the proofs that the main reason for his leaving was personal to himself, and for his own benefit. This, instead of being a mitigation, is rather an aggravation of the offense.

The best men are usually employed here, upon the lakes, before the commencement of the season of navigation; it is difficult to get good men after that time, and it will not do to encourage mariners to treat their contracts for service lightly, to break them at pleasure, and thus place owners at the mercy of their caprices and whims; and I desire it to be understood that the court looks upon all desertion, which is not fully justified, with disapprobation, and that the extreme penalty of the law will be inflicted in all cases where the party deserting has not a strong excuse, founded on gross misconduct or harsh usage towards him. In the view already taken, it is unnecessary to consider the claim of damages in consequence of the desertion. It is proper to remark, however, that although the respondents fail-

ed to establish such a state of facts as would constitute a basis· for any specific measure of damages, yet sufficient appears from which it is fair to presume that damage to the owners must have resulted from the desertion. It is conceded on all hands that libellant possessed superior skill in the position in which he was employed, and that his services were also peculiarly valuable on account of his extensive acquaintance and popularity with owners and masters of vessels usually employing tugs, and also, on account of his knowledge of towing rafts, which this tug proposed to and did make somewhat a specialty. In place of libellant, the owners were obliged to take up with a man of qualifications inferior to libellant's in all respects; and although it is in proof that the remainder of the season was much less profitable for the towing business than that portion during which libellant served, yet it is fair to presume that with libellant's superior knowledge, skill and reputation, the tug would have earned much more than she did earn—how much more it would be impossible, as it is unnecessary, to determine. All ·that I intend to say, and all that is necessary to say here, is, that the owners were undoubtedly materially damaged by the desertion.

We see, therefore, the case has all the elements necessary to give the rule of the maritime law its full force, without any mitigating circumstances to break or alleviate it. It is therefore held that the balance due libellant for wages, as above stated, is forfeited, and the libel must be dismissed with costs.

Libel dismissed.

NOTE, [from original report.] This case was appealed to the circuit court. Pending the appeal, libellant brought suit for the same cause of action at common law, in the state court. The state court having, on motion, stayed the proceedings, the supreme court vacated this order by mandamus (27 Mich. 406), and directed the case to proceed to judgment. Before the trial of the case, however, the above decree of the district court, dismissing the libel, was affirmed by the circuit court on appeal. [Nowhere reported.] This decree was then pleaded in the state court, as res adjudicata, but was overruled, and a verdict rendered for the plaintiff for $602. The case was then removed to the supreme court of the state, by writ of error, where the judgment was affirmed at the October term, A. D. 1875. That court held that the decree of a court of admiralty, dismissing a libel in rem.· was no bar to a suit at common law for the same cause of action.