WELCH et al. v. FALLON et al.

(District Court, D. Massachusetts. December 31, 1909.)

No. 148.

1. ADMIRALTY (§ 30*)—PLEADING—JOINDER OF CAUSES IN CONTRACT AND TORT.
   A court of admiralty may, in its discretion, permit the joinder in the same libel of claims in contract and tort.
   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 299; Dec. Dig. § 30.*]

2. SEAMEN (§ 11*)—MEDICAL TREATMENT—EQUIPMENT OF FISHING VESSEL.
   There is no law requiring fishing vessels, which are generally not far distant from a port of supply, to carry a medicine chest; and as a rule the failure to do so cannot be charged as negligence, which will render the owners liable in damages to a member of the crew who is injured, and especially where the master and crew shipped on a lay, and are chargeable with the supplies and share in the profits of the voyage, in

---

*For other cases see same topic & § NUMBER in Dec & Am. Digs. 1907 to date, & Rep'r Indexes

which case the master is the representative of the crew, rather than of the owners.

[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 11.*

Rights and liabilities of seamen as to medical treatment, see note to The Cuzco, 83 C. C. A. 186.]

3. SEAMEN (§ 28*)—FISHERMEN—SHARE IN EARNINGS—EFFECT OF SICKNESS OR INJURY.

A member of the crew of a fishing vessel, shipping on a lay, who was injured while in the service without his fault, and thereby disabled until after the voyage ended, is entitled to his share in the proceeds, as though he had remained on board and served until the end.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 170–175; Dec. Dig. § 28.*]

4. SEAMEN (§ 28*)—COMPENSATION—"HALF LINE."

The "half line" plan in the fishing business is an arrangement between the owners of a fishing vessel and a master and his crew, whereby the master undertakes a fishing voyage, in which the gross proceeds of the catch, less certain deductions, are shared equally between the vessel and the master and crew; the latter half share, after payment for certain things charged to the master and crew as a body, being divided among them share and share alike. The voyage is a "half line voyage."

[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 28.*]

In Admiralty. Suit by John Welch and another against John J. Fallon and others, as owners of the fishing schooner Arthur Binney. Decree for libelants.

French & Sullivan and A. A. Lang, for libelants.

Russell & Russell, for respondents.

DODGE, District Judge. The three respondents are ·the owners of the fishing schooner Arthur Binney. The respondent Fallon appears to have been managing owner. In March, 1907, the libelant was one of a fishing crew who agreed with one McKay to make a fishing voyage in her. McKay, by arrangement with the owners, undertook the voyage as master, obtained his crew, and made the voyage on what is known in the fishing business as the "half line" plan, according to which the gross proceeds of the catch, less certain deductions, are shared equally between the vessel and the master and crew; the latter half share, after payment for certain things charged to the master and crew as a body, being divided among them share and share alike. The master and crew were 18 men in all, including the libelant and Frost, who has filed a petition to intervene, and all understood that they were shipping with McKay as master on a "half line" voyage. The vessel left Boston about the end of March, and returned there about the end of August. The fishing done was for mackerel, and was mainly off the New Jersey coast. From time to time she put into Lewes or New York, to land and sell fish or for other purposes.

On April 25th according to the libel, or on April 23d according to the evidence, the libelant hurt three of his fingers, by getting them jammed between the seine boat, which was being launched and manned at the time, and the vessel. He left the vessel not less than seven days later, at New York, with the injured fingers in bad condition, and went

to a hospital, where it was found necessary to amputate parts of them. This was done, according to the libel, on May 2d. He was not again in condition to do work aboard until after the vessel had finished the voyage and had returned to Boston.

He makes two distinct claims in his libel. One is for a full share in the crew's part of the entire voyage, as wages due him. The other is for damages, and is based on allegations that his injuries were caused by negligence, for which the owners are liable. An objection that claims in contract and in tort may not be joined in the same libel was duly taken by exception, but was overruled. As to the propriety of such a joinder there has been some conflict. Pratt v. Thomas, 1 Ware, 427, Fed. Cas. No. 11,377; The Guiding Star (D. C.) 1 Fed. 347; Olsen v. Whitney (D. C.) 109 Fed. 80; 2 Parsons, Shipping and Admiralty, 374, 375. I find nothing, however, which seems in any way conclusive against permitting it, and in this case it seems to me to have the advantage of convenience, without imposing any real disadvantage upon the respondents.

The only alleged ground for the damage claim is the absence of "medicines" on board the vessel. Merchant vessels, whose voyages may probably oblige them to stay at sea for considerable periods, or take them far away from any port of supply, and for the outfitting of which the owners assume the full responsibility, are required by statute to be provided with "a chest of medicines." Rev. St. §§ 4569, 4570 (U. S. Comp. St. 1901, p. 3100). But there is no such requirement applying to fishing vessels, and, speaking generally, it may be said that, so far as they are concerned, little occasion exists for any such requirement. Not only does their employment seldom take them far out of reach of a port of supply, but the supplies to be consumed on their trips, if furnished by the owners in the first instance, are really paid for by the captain and crew out of their share in the voyage. Such is the result of the arrangements according to which fishing trips are commonly made, as it is of the arrangement under which this vessel sailed. For the purpose of selecting the supplies to be taken, or of seeing that they are all on board when the vessel sails, the master would appear to be the representative rather of the crew than of the owners.

But, even if it be assumed that the owners were bound to see that this vessel had "medicines" on board, the evidence in this case does not show that it was for want of anything commonly carried on board vessels under that term, whether merchant or fishing vessels, that the libelant's fingers got into a condition requiring amputation. That condition was brought about by the want of sufficient antiseptic treatment, rather than of "medicines," and such treatment could hardly be expected on board a fisherman, whether provided or not with the usual "medicines," by reason of the unavoidable difficulty of keeping the wounds properly cleansed and protected against infection.

The evidence does not seem to me to disclose on the part of the master any want of due attention to the libelant's injuries, so far as anything to be done on board the vessel is concerned. I think he did all that could reasonably have been expected of him, if the vessel was to continue fishing and the libelant to remain on board her. He went

on board another fishing vessel, and brought from her some remedies which were used in binding up the libelant's fingers. It was urged that the libelant ought to have been taken at once in the vessel to the nearest port where hospital treatment could be had, instead of being kept on board until she got into New York, a week or more after the injuries were sustained; but no such claim is made in the libel, and there was no attempt to introduce such a claim by amendment until after the evidence had been closed. I declined to permit its introduction at that time. I think the respondents were clearly entitled to notice in advance of the trial that such a claim was asserted against them. It cannot be taken for granted that, with such notice, they would have had no further evidence to offer than that which they have introduced upon the issues presented by these pleadings. No other issues are properly before the court. Whether or not the master ought on the whole, as part of his duty toward the libelant, to have left the fishing grounds at once and headed his vessel for that port which could have been soonest reached, where hospital treatment might be had, is not a question to be investigated in this case. There were, in the evidence I have heard, conflicting statements about matters which might have been important in such an investigation. The further question whether or not negligence of the master in this respect would render the owners liable, in view of the terms upon which this vessel was sailed and her crew shipped, is, of course, also outside the scope of the controversy raised by these pleadings.

In Knight v. Parsons, 1 Sprague, 279, Fed. Cas. No. 7,886, decided in this court in 1855, Judge Sprague held that a fisherman on shares has, if injured in the course of his services on board, the rights of a seaman on wages to cure at the vessel's expense. See, also, Crowell v. Knight, 2 Lowell, 307, Fed. Cas. No. 3,445; The Cornelia M. Kingsland (D. C.) 25 Fed. 856, where this rule appears to have been accepted as settled law. Since a seaman on wages, injured in the ship's service, may claim wages to the end of the voyage (The Osceola, 189 U. S. 158, 175, 23 Sup. Ct. 483, 47 L. Ed. 760), and since it has been decided in this circuit that the shares of fishermen in the proceeds of the voyage are substantially wages, and that fishermen are to be regarded as seamen for the purposes of recovery of the shares due them (The Carrier Dove, 93 Fed. 978; Id., 97 Fed. 111, 38 C. C. A. 73), I think this libelant may properly claim a share in the voyage as if he had continued on board until it was ended. The evidence seems to me to show that his disability continued until after the vessel had returned to Boston. It appears that the proceeds of the voyage came into the owner's hands, and that there is no dispute regarding the total amount realized, or the amount of the libelant's share, if he is entitled to one. The accounts of the voyage were made up by the owners, and they were to make the distribution. A considerable number, if not all, of the other men composing the crew, have left in the owners' hands money which should belong to them if the libelant is not to share in the voyage, in order that it may go to him if his claim to a share is established. I see no reason why the owners might not have retained the whole of his share in their hands pending a decision on the merits of his claim, if it be true that they have not done so.

The defense of laches on his part in asserting the claim is set up in the answer, but is not, in my opinion, sustained by the evidence.

The agreed amount of the libelant's total share in the voyage, if he is entitled to such a share, is $281.49. For advances made or goods supplied to him on account by the owners during the voyage, $29 is to be deducted. There may be a decree in his favor for the balance of $252.49.

As to the intervening petitioner, Frost, it appears that he left the vessel at New York in May, and that McKay gave him an order upon the owners for the "balance due him." The evidence, however, has not satisfied me that there was any balance due him at the time. I think he had received on account more than his share of the proceeds of the voyage, up to the time he left the vessel, amounted to. Upon his petition, therefore, the decree will be in favor of the respondents.