[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 23, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15209

_____

T.C. Docket No. 3130-06

MIKE KURTZ,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from the Decision of the
United States Tax Court

_____

(July 23, 2009)

Before BLACK and MARCUS, Circuit Judges, and QUIST,* District Judge.

_____

* Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

QUIST, District Judge:

The Internal Revenue Code permits an individual to deduct from his federally taxable income "amounts expended for meals . . . while away from home in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2). This deduction is limited to "50 percent of the amount" expended. 26 U.S.C. § 274(n)(1). There are, however, exceptions to this limitation. One such exception permits a taxpayer to deduct 100 percent of the expense for "food or beverages *required* by *any* Federal law to be provided to crew members of a commercial vessel." 26 U.S.C. § 274(n)(2)(E)(i). (italics added.) The sole question on appeal is whether this exception applies to seamen aboard a *fishing* vessel. The Tax Court held that it did not. Our answer turns on whether "any Federal law" requires food or beverage be provided to seamen aboard a fishing vessel. Because it does not, we affirm.

## I.

Appellant, Mike Kurtz, served as an engineer aboard the commercial fishing vessels "Storm Petrel" and "Poseidon" in 2001 and 2002, respectively. Kurtz was compensated with a share of the catch aboard both vessels. Kurtz worked 231 days aboard the Storm Petrel in 2001 and 145 days aboard the Poseidon in 2002. Both ships harbored in Dutch Harbor, Alaska. The vessels harvested cod and pollock in the Bering Sea off the Alaskan coast. A typical voyage lasted four or five days, but

2

some lasted longer than a week. He was charged $25.00 per day for the meals served aboard, and he was not reimbursed for those meals. Federal regulations provide a per diem meals and incidental expense rate. The per diem rate for Dutch Harbor, Alaska varied from $67 to $78 during 2001 and 2002. Rather than deduct the actual cost of his meals, Kurtz deducted 100% of the federal meals and incidental expense per diem rate each day he was at sea on his federal income tax returns for 2001 and 2002. The IRS agrees that Kurtz was entitled to base his deduction on the per diem rate rather than his actual cost. However, it assessed deficiencies of $10,823 and $16,899 in Kurtz's income tax for 2001 and 2002, respectively, after it determined that he was permitted to deduct only 50% of the federal per diem rate pursuant to 26 U.S.C. § 274(n)(1). Kurtz filed a petition with the Tax Court seeking a redetermination of the deficiencies. The sole question before the Tax Court was whether he could deduct 50% or 100% of the federal per diem rate for his meals at sea. Kurtz claimed he was entitled to deduct $16,161 for meals in 2001 and $10,507 in 2002. The IRS argued those figures should be halved. The case was tried before the Tax Court on a stipulated record.

The Tax Court examined several sources of law and determined that nothing brought to its attention required the provision of food or beverages to seaman aboard a fishing vessel. The court rejected Kurtz's contention that 18 U.S.C. § 2191, a

3

criminal statute prohibiting the withholding of food from seamen, created an affirmative duty to provide seamen food or beverage. It also determined that 46 U.S.C. § 10303, which provides that "a seaman shall be served at least 3 meals a day that total at least 3,100 calories," was inapplicable to Kurtz because it specifically excepted from coverage seamen aboard "a fishing or whaling vessel or a yacht." 46 U.S.C. § 10303(c). The court noted that federal law "specifically tailored to fishing voyages is codified in 46 U.S.C. sections 10601 through 10603 … and does not contain any requirement that seamen employed on fishing vessels be provided with food or beverage." Finally, it rejected Kurtz's argument that the provision of food and water was required by the maritime common law doctrine of seaworthiness. The court reasoned that 46 U.S.C. § 10901, *et seq.*, addressed proceedings on unseaworthiness and specifically excepted fishing vessels from its coverage.

## II.

The question before the Court is one of law. As such, the Court reviews it *de novo. Bone v. Comm'r*, 324 F.3d 1289, 1293 (11th Cir. 2003); *Feldman v. Comm'r*, 20 F.3d 1128, 1131 (11th Cir. 1994). Kurtz has the burden of clearly showing a right to the claimed deduction by coming within the letter of the deduction. *INDOPCO, Inc. v. Comm'r,* 503 U.S. 79, 84, 112 S. Ct. 1039, 1043 (1992); *Sumter Farm & Stock Co. v. United States*, 151 F.2d 975, 976 (5th Cir. 1945).

Kurtz argues that "any federal law" includes maritime common law in addition to federal statutes. The Tax Court, he contends, did not construe "any" broadly enough. Like the Tax Court, we find no federal law requiring the provision of food or beverage to seamen aboard a commercial fishing vessel.

*A. Maritime Common Law*

Commercial seamen have historically been treated as wards of the court, enjoying special protections because they are vulnerable to exploitation by their employers at sea. *Fuller v. Golden Age Fisheries*, 14 F.3d 1405, 1408 (9th Cir. 1994). Myriad decisions note that the shipmaster is obliged to provide suitable food and water to these seamen under his charge. *See, e.g., The Lottie Bennett*, 3 F. Supp. 764 (N.D. Cal. 1933); *The Balize*, 2 F. Cas. 547 (E.D. Mich. 1872); *Foster v. Sampson*, 9 F. Cas. 572 (D.C. Mass. 1849); *Dixon v. The Cyrus*, 7 F. Cas. 755 (D. Pa. 1789). Seamen aboard fishing vessels, however, have traditionally borne greater responsibility for themselves and their provisions than those aboard other commercial vessels. This is reflected in both our common and statutory law. "Unlike merchant seamen, who have long enjoyed the special protection of courts and Congress, American fishermen . . . have not been the subject of much federal legislative concern throughout most of our nation's history." *TCW Special Credits v. Chloe Z Fishing Co.*, 129 F.3d 1330, 1332 (9th Cir. 1997).

Other courts have also noted the distinction between fishermen and merchant seamen. In *Sigurjonsson v. Trans-American Traders, Inc.*, 188 F.2d 760 (5th Cir. 1951), the former Fifth Circuit in binding precedent held that the crew was not entitled to seamen's wages provided by statute because it contracted with the owner of the ship for half of the proceeds from the sale of the fish caught on their voyage. *Id.* at 762.[1] The court also noted that "fishing vessels are expressly excluded from the [wage] penalty provisions of 46 U.S.C. §§ 596 and 665," the applicable statutes governing the conditions of employment of merchant seamen at the time. *Id.* In *Welch v. Fallon*, 181 F. 875 (D.C. Mass. 1909), the court noted that

> merchant vessels, whose voyages may probably oblige them to stay at sea for considerable periods, or take them far away from any port of supply, and for the outfitting of which the owners assume a full responsibility, are required by statute to be provided with a chest of medicines . . . . But there is no such requirement applying to fishing vessels, and, speaking generally, it may be said that, so far as they are concerned, little occasion exists for any such requirement. Not only does their employment seldom take them far out of reach of a port of supply, but the supplies to be consumed on their trips, if furnished by the owners in the first instance, are really paid for by the captain and crew out of their share in the voyage.

*Id.* at 877. In *Old Point Fish Co. v. Haywood*, 109 F.2d 703, 704 (4th Cir. 1940), the court observed that it was "common practice from ancient times" for the crew of a fishing vessel to "furnish the food, ice and fuel" and receive a portion of the proceeds

---

[1] The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

from the catch. These and other similar cases reveal that seamen aboard fishing vessels have historically been compensated with a share of the revenue from the catch and that they have provided the fuel and other provisions for the journey, or, if the provisions were provided by the ship's owner, the owner debited their cost from the seamen's share of the profits – just like Kurtz.

Kurtz contends that the common law doctrine of seaworthiness requires the provision of food and beverage to crew members. Seaworthiness is an implied warranty from a ship's owner to its crew that the vessel is reasonably fit for its intended purpose. *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1318 (11th Cir. 2003). Kurtz argues that: 1) a ship must be kept seaworthy at all times; 2) the crew is an integral part of the ship; 3) the ship is unfit if the crew is unfit; 4) the crew is unfit if it lacks adequate food and water; and 5) the provision of food and water is thus necessary for a ship to be seaworthy.

The principal problem with this argument is that the same common law that creates the doctrine of seaworthiness recognizes the longstanding customs of seafaring fishermen, i.e., that the fishermen are responsible for their provisions. The ship is no less seaworthy if the fisherman provide their own food and water. Seaworthiness does not oblige the shipmaster to provide food or beverage to the fishermen.

7

## B. Codification of the Common Law

Throughout our nation's history, Congress has enacted statutes codifying common law doctrines protecting seamen. These statutes often excluded seamen aboard fishing vessels. Congress first imposed penalties upon merchant marine ships who fail to provide their crews with access to proper food and water in the Act of 1790, Ch. 29 § 9, which states:

> every ship or vessel . . . *bound on a voyage across the Atlantic ocean*, shall, at the time of leaving the last port from whence she sails, have on board . . . at least sixty gallons of water, one hundred pounds of salted flesh meat, and one hundred pounds of wholesome ship-bread, for every person on board . . . .

1 Stat. 135 (emphasis added). This protection applied only to ships on transatlantic voyages and was thus inapplicable to local commercial fishing vessels. *See The Iathe*, 12 F. Cas. 1145, 1146 (D. Maine 1856) ("The fishing trade . . . is, and always has been, regulated by its own appropriate and peculiar system of laws," and the Act of 1790 cannot "be made to reach an ordinary fishing voyage").

In 1873, Congress required the master of a vessel bound to a foreign port to contract with each individual aboard, and specify a scale of provisions that would be provided each seaman. 53 U.S.C. § 4511, Rev. Stat. 878. This statute also required fishing vessels enter into contracts with their crews, but did not require a scale of required provisions aboard fishing vessels. In 1898, Congress amended the statute to modify the statutory scale of required provisions, and expressly stated that these

8

food requirements "shall not apply to fishing or whaling vessels or yachts." Rev. Stat. Supp. 906, 908 (1898); H.R. Rep. No. 55-1657 at 2 (1898).

In 1983, Congress again revised the maritime law, now codified as Title 46 of the United States Code. Pub. L. No. 98-89, 97 Stat. 500 (1983). 46 U.S.C. §§ 10301-21 govern the rights of seaman on foreign and intercoastal voyages.[2] Chapter 103 requires the vessel's owner or agent to form a written agreement with each seaman. This agreement must include "a scale of the provisions that are to be provided each seaman." 46 U.S.C. § 10302(b)(6). This agreement must also specify, "[a] seaman shall be served at least 3 meals a day that total at least 3,100 calories, including adequate water and adequate protein, vitamins, and minerals in accordance with the United States Recommended Daily Allowances." 46 U.S.C. § 10303.

The statutory protections afforded seamen aboard fishing vessels or on shorter voyages is narrower than that afforded seamen on foreign and intercoastal voyages. 46 U.S.C. §§ 10601-03 govern the rights of a fishing vessel's crew. Section 10601 requires the vessel's owner or agent to "make an [] agreement in writing with each seaman" which specifies "the [agreement's] period of effectiveness"; the terms of compensation; and "other agreed terms." In contrast to Chapter 103, Chapter 106 does not require any guarantee for the provision of food or beverage aboard the

_____

[2] A "foreign" voyage is one between a port in the United States and a port in a foreign country other than Canada, Mexico, or the West Indies. 46 U.S.C. § 10301(a)(1). An "intercoastal" voyage is one between a port of the United States on the Atlantic Ocean and a port of the United States on the Pacific Ocean. 46 U.S.C. § 10301(a)(2).

9

fishing vessel. Chapter 106's savings clause states only that "[t]his section does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds." 46 U.S.C. § 10602(c).

46 U.S.C. § 10501-09 similarly governs the rights of seamen on coastwise voyages.[3] It also requires the formation of a written agreement with each seaman. However, this agreement need "not contain . . . a scale of provisions." 46 U.S.C. § 10502(c). Like Chapter 106, and in contrast to Chapter 103, Chapter 105 does not require the provision of food or water to the crew on coastwise voyages.

Congress has specifically instructed that marine employees on foreign and intercoastal voyages are to receive three meals a day, while omitting a similar provision in its statutory scheme governing fishing vessels and vessels on coastwise voyages. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225-26 (11th Cir. 2001). As we have written before, we "must presume that Congress said what it meant and meant what it said." *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003). Congress thus intended to exempt the masters of fishing vessels and vessels on

_____

[3] A "coastwise" voyage is one between a port in one State and a port in another State (except an adjoining State) to which the provisions of Chapter 103 of Title 46 are inapplicable. 46 U.S.C. § 10501(a).

shorter journeys from the obligation to provide food and water to the crew. Indeed, 46 U.S.C. § 10301(b) specifies that the requirements of Chapter 103 *do not apply* to a "vessel on which the seamen are entitled by custom or agreement to share in the profit or result of a voyage," and 46 U.S.C. § 10303(c) provides that its guarantee of the provision of meals does "not apply to a fishing or whaling vessel or a yacht." Federal statutory law simply does not require that meals be provided to crew members of commercial fishing vessels.

## C. Statutes Prohibiting the Withholding of Food

18 U.S.C. § 2191 states that "[w]hoever, being the master or officer of a vessel of the United States, … withholds from [the crew] suitable food and nourishment … shall be fined under this title or imprisoned not more than five years, or both." 46 U.S.C. § 11501 specifies that "[f]or continued willful disobedience to lawful command or continued willful neglect of duty at sea, the seaman … may be confined, on water and 1,000 calories, with full rations every 5th day, until the disobedience ends." Kurtz argues that these statutes require the provision of food and water to the crew. We disagree. Prohibiting the withholding of food is not tantamount to creating an affirmative duty to make it available on the vessel.

11

## D. Legislative History

Furthermore, in enacting the exceptions in 26 U.S.C. § 274(n)(2)(E)(i) to the general rule that one may deduct only 50 percent of his meal expenses while traveling for business, Congress observed that the exception would not apply to fishing vessels:

> The percentage reduction rule does not apply to an otherwise allowable deduction for expenses of food or beverages that (1) are required by Federal law (46 U.S.C. § 10303) to be provided to crew members of a commercial vessel, or (2) are provided to crew members of a commercial vessel operating on the Great Lakes, the St. Lawrence Seaway, or the U.S. inland waterways that is of a kind that would be required by Federal law to provide food or beverages to crew members if operated at sea. (Thus, for example, the *provision for full deductibility would not apply with respect to fishing boats* or foreign vessels operating on the inland waterways).

H.R. Conf. Rep. No. 100-1104 (Vol. II) at 134-15, 1988-3 C.B. 473, 624-25 (emphasis added). Thus, it was Congress's understanding that no federal law requires the provision of food or beverage to seamen aboard a fishing vessel. Our review of the historical evolution of the pertinent statutory scheme, the statutory language, the legislative history of the tax code, and federal maritime common law - including the seaworthiness doctrine - reveals that this is indeed the case. It follows apodictically that the exception in 26 U.S.C. § 274(n)(2)(E)(i) to the 50 percent limitation on the deduction of meal expenses while traveling for business is inapplicable to Kurtz.

## CONCLUSION

For these reasons, no federal statute or common law requires a shipmaster to provide food or water to seamen aboard a commercial fishing vessel. Because no federal law requires food or beverage to be provided to crew members of a commercial fishing vessel, Kurtz can deduct only 50% of the meal expense. The judgment of the Tax Court is therefore **AFFIRMED**.